**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

DAVID LONG,

        Plaintiff,

v.                                       No. Civ. 07-0629 LH/GBW

LOCKHEED MARTIN SERVICES, INC.,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

On October 24, 2008, Defendant Lockheed Martin Services, Inc., ("Defendant" or "LMSI")

filed a Motion for Summary Judgment on Counts I, II, III, and IV of the Complaint and

Memorandum in Support (Doc. 46) (hereinafter "Def.'s Mot."). The Court, having considered the

briefs, evidence, applicable law, and otherwise being fully advised, concludes that Defendant's

motion should be granted.

**I.     INTRODUCTION**

Plaintiff David Long ("Plaintiff"), a white male, brings suit against his employer, LMSI,

alleging that LMSI discriminated against him because of his race, national origin, and age when

LMSI declined to hire Plaintiff for a position for which he was qualified, and instead, hired a

younger, less-qualified Hispanic male for the position. He contends that LMSI discriminated against

him on the basis of his race in violation of Title VII and the New Mexico Human Rights Act

("NMHRA") (Count I) and in violation of 42 U.S.C. § 1981 (Count II). He further asserts that

LMSI discriminated against him because of his national origin (non-Hispanic) in violation of Title

VII and the NMHRA (Count III). Finally, he contends that LMSI discriminated against him based

on his age in violation of the Age Discrimination in Employment Act ("ADEA") and the NMHRA

(Count IV).  Defendant asserts that Plaintiff was denied the job because he was not the best qualified

candidate and that neither Plaintiff's race, national origin, or age factored into the selection process.

Defendant moves for summary judgment on Plaintiff's claims for race, national origin, and age

discrimination.

## II.  FACTUAL BACKGROUND[1]

In the summer of 2006, LMSI posted a vacancy for a flight engineer contract instructor

position to instruct on the UH-1N rotary wing aircraft.  (Def.'s Mot., Undisputed Fact ("UF") ¶ 1.)

The job position posting listed both required and desired job qualifications.  (*Id.,* UF ¶ 2.)

Plaintiff and fellow LMSI employee Gerald Diaz both applied for the position.  (*Id.* ¶¶ 3-4.)

Plaintiff is an Anglo male who was 53 years of age at the time of his job interview, while Mr. Diaz

is a Hispanic male who was 45 years of age at the time of his interview.  (*Id.*)  Both Plaintiff and Mr.

Diaz possessed the required qualifications for the job.  (*See id.*, Ex. A at 66, 81.)

Plaintiff requested that he be taken off his primary schedule in order to monitor some UH-1N

classes.  (*See* Pl.'s App. (Doc. 54-2) at 5-6.)  In response to his email request, Terry Jahnke, the lead

services manager on-site, responded to Plaintiff by email to please come by so they could discuss

the request.  (*See id.* at 3; Def.'s Mot., Ex. A at 111-12.)  Mr. Jahnke later told Plaintiff that he

believed it would serve Plaintiff no purpose to monitor the classes given his background on that

particular airframe.  (*See* Pl.'s App. (Doc. 54-2) at 5-6.)  Plaintiff nevertheless, on his own and

---

[1]The following facts are undisputed or, if disputed with admissible evidence, are construed in the light most favorable to Plaintiff, the non-moving party.  Plaintiff disputes a number of facts without controverting them with specific, admissible evidence.  The Court has deemed admitted those facts not disputed with admissible evidence.  *See* Fed. R. Civ. P. 56(e)(2); D.N.M.LR-Civ. 56.1(b).

without management approval, monitored two UH-1N classes – a one-hour flight simulator class and a two-hour systems class.  (*See id.*)  Plaintiff testified that he did not monitor any other classes because he had already been trained and certified in all of those systems and was already familiar with them.  (*See id.*)[2]

The interview process for the UH-1N position consisted of a series of questions taken from a standardized form.  (*See* Def.'s Mot., Ex. A at 9.)  The Applicant Interview Evaluation Forms included categories for education, special skills and certifications, honors and awards, various categories for experience, team player, clearance, personal presentation, communication abilities, work schedule issues, and whether relocation was required.  (*See id.*, Ex. A at Ex. 3.)  During the process, the interviewers were to ask questions, propose situations, get responses, and in their judgment, put down a final score.  (*See id.*, Ex. A at 9.)  The scores were added up, and the highest score was to be looked at by the hiring manager, who then was to decide whether to recommend the candidate with the highest score or to look at the decision further.  (*See id.*, Ex. A at 9.)  The candidate with the highest score generally should be chosen, unless there was a discrepancy in the scores, such as if one interviewer rated the candidate very high while another rated him very low. (*See* Pl.'s App. (Doc. 54) at 7.)

_____

[2]Plaintiff argues that LMSI facilitated the attendance of Mr. Diaz to the relevant training and continued to train him after his selection, but denied permission to Plaintiff and otherwise prevented him from attending training classes.  (*See* Pl.'s Resp. (Doc. 52) at 9.)  The admissible evidence in the record, however, does not support Plaintiff's assertions.  Instead, the evidence only shows that Mr. Jahnke told Plaintiff that he believed it would serve him no purpose to monitor the classes, that Plaintiff attended some classes anyway, and that he did not attend more because he felt he was already familiar with the systems and that the classes would not benefit him.  As to Mr. Diaz's alleged continued training, Plaintiff does not have admissible evidence to support this statement.  Plaintiff relies on a copy of his letter to the Equal Employment Opportunity Commission ("EEOC") in which he merely alleges that Mr. Diaz's training continued after his selection.  This allegation in the letter is hearsay and is not admissible evidence.  The Court will thus not consider it.

3

Both Plaintiff and Mr. Diaz were interviewed for the position on August 3, 2006, by a committee of three interviewers:  Jeffrey Walls, the Simulation Training and Support training manager; Terrence Jahnke, the hiring manager and lead services manager on-site; and Deanna Hall, the administrative assistant/human resources lead for the site.  (*See* Def.'s Mot., UF ¶ 7 & Ex. A at 110-13, Ex. 3.)  Terry Jahnke was the hiring manager who had the final decision to fill the position. (*See id.*, Ex. A at 113.)  He was also Ms. Hall's supervisor.  (*See id.*, Ex. A at 111.)  The interviewers all knew of an incident in which Plaintiff was purportedly disrespectful to a chief master sergeant, which resulted in a letter of reprimand, although the incident was not brought up and addressed during the interview process.  (*See* Pl.'s App. (Doc. 54) at 5-6.)  The interviewers were also aware of Plaintiff's work-related behavior during his period of employment, including employee complaints that Plaintiff had been disrespectful, rude, loud, and unprofessional as well as student critiques in which students highlighted Plaintiff as being less of an instructor than people like to see.  (*See id.*)

The panel interviewed Mr. Diaz and Plaintiff and rated their qualifications according to the Applicant Interview Evaluation Forms.  (*See* Def.'s Mot., Ex. A at 32, Ex. 3.)  Mr. Diaz received scores of 56, 60, and 64.  (*Id.*)  Mr. Walls remarked on his evaluation form that Mr. Diaz was very impressive and recommended that an offer be made to him because he could not imagine anybody being more qualified.  (*Id.*, Ex. A at Ex. 3)  Plaintiff received lower scores of 53.5, 54, and 49.  (*Id.*) LMSI offered the job to Mr. Diaz over Plaintiff.  (*See id.*, Ex. A at 32-33, 80-81.)[3]  Some of the

---

[3]Plaintiff disputes that this process constituted the selection decision.  Plaintiff argues that LMSI provided inconsistent testimony regarding the actual qualifications required and evaluated and that LMSI gave contradictory reasons at different times for its decision not to hire Plaintiff.  Specifically, Plaintiff argues that, after responding to the EEOC, LMSI "stated that Plaintiff was not selected because of an incident with a chief master sergeant in which he allegedly failed to say hello and because of certain unspecified and unproduced anonymous

factors that LMSI considered in hiring Mr. Diaz were his personality and professionalism,[4] his

initiative in attending training seminars, and his having flown the aircraft in the Air Force more

recently.[5]   (*See id.*, Ex. A at 66-67, 103.)

Plaintiff believes he was a superior candidate to Mr. Diaz based on his qualifications,

training, education, practical experience in the field, and combat zone experience, and that LMSI's

failure to offer him the position therefore must have been because of race or age.  (*See* Pl.'s App.

(Doc. 54-3) at 1; Def.'s Mot., Ex. C at 5, 133, 142.)  After being denied the position, Plaintiff filed

a complaint with the EEOC in December 2006, alleging that he was denied the position based on

---

student complaints about his personality."  (Pl.'s Resp. (Doc. 52) at 2.)  Plaintiff then cites the
deposition testimony of Michael Homan in support of this argument.  Mr. Homan's testimony,
however, does not support Plaintiff's argument.  When asked what issues from Plaintiff's work
history played a factor in his non-selection, Mr. Homan did mention the incident resulting in the
reprimand letter and Plaintiff's work-related behavior, all of which the interviewers would have
been aware.  (Pl.'s App. (Doc. 54) at 5.)  However, when specifically asked why Plaintiff was
not accepted for the UH-1N position, Mr. Homan replied that Plaintiff did not receive a score
that indicated he was the highest, best-qualified candidate during the interview process.  (*See id.*
at 6-7.)  Plaintiff's evidence does not create a question of material fact as to the selection criteria
and requirements.

[4]Plaintiff disputes that "personality and professionalism" were considered during the
evaluation process because these terms were never listed in the Applicant Interview Evaluation
Forms.  (*See* Pl.'s Resp. at 4.)  The evaluation forms, however, did list "Team Player" as a
category, which the form described as "Volunteerism, Positive Attitude, Self Starter."  (*See*
Def.'s Mot., Ex. A at Ex. 3.)  That category covers elements of personality and professionalism.
Plaintiff's argument disputing Defendant's Fact 10(a) is thus not supported by the record.

[5]Plaintiff disputes that LMSI based its selection of Mr. Diaz in part on his initiative and
motivation in attending training seminars and on his more recent experience flying the airframe
in the Air Force.  Plaintiff points to the fact that Mr. Jahnke discouraged Plaintiff from taking the
same classes.  That fact alone, however, does not create an issue of fact as to whether the
interviewers believed Mr. Diaz to be more motivated than Plaintiff.  Moreover, the fact that
Plaintiff had monitored UH-1N classes recently does not negate Defendant's assertion that one
of the factors it considered in its decision was that Mr. Diaz had flown the aircraft more recently
in the Air Force.  Finally, that the interviewers did not make any notes regarding any recent
training received by any of the candidates does not prove that they did not consider that factor in
their decision.

his race and age.  (*See* Pl.'s App. (Doc. 54) at 1; Pl.'s App. (Doc. 54-3) at 2.).  Plaintiff asserted in

his EEOC complaint that he was significantly more qualified than the selected person and that LMSI

gave no reason for his non-selection.  (Pl.s' App. (Doc. 54-3) at 2.)  LMSI submitted a letter dated

February 6, 2007, to the EEOC in response to Plaintiff's charge of discrimination.  (*See* Pl.'s App.

(Doc. 54) at 1-3.)  In the letter, LMSI stated that Mr. Diaz was selected for the position because,

after the interview process, LMSI determined that Mr. Diaz was more qualified for the position than

the other applicants, including Plaintiff.  (*See id.*)  LMSI further wrote that, in evaluating Plaintiff's

and Mr. Diaz's relevant training for the position, LMSI found that Mr. Diaz had attended the

required training class for the airframe, while Plaintiff did not. (*See id.* at 2.)  In the letter, LMSI

concluded: "Although Mr. Long had UH1 training during his military career, he did not possess

current certifications or training and did not meet customer requirements to teach this particular

airframe.  As a result, the candidate with the required qualifications, certifications and recent

training on the UH1 simulator was selected for the position."  (*Id.*)  Finally, LMSI noted that the

scores from the interview evaluation forms showed that Mr. Diaz scored highest.  (*Id.* at 2-3.)

     On August 16, 2006, Plaintiff sent an email to LMSI's Ethics Office inquiring how to start

a formal discrimination complaint.  (*See* Pl.'s App. (Doc. 54-3) at 7.)  In March 2007, in response

to a letter not in the record, LMSI's Ethics Office sent Plaintiff a letter indicating that, because

Plaintiff was pursuing his claims with the EEOC, the Ethics Office would not separately investigate

the matter.  (*See* Pl.'s App. (Doc. 54-4) at 2.)[6]

---

     [6]Plaintiff alleges that LMSI took no action on his ethics complaint until March 2007.
(*See* Pl.'s Resp. at 9.)  The record does not support this allegation.  Plaintiff cites to the
deposition of Michael Ferguson.  Mr. Ferguson testified that he knew there was follow-up with
Plaintiff's complaint, but that he was not familiar with the specifics of the case to know what
was actually done.  (*See* Pl.'s App. (Doc. 54-4) at 3-4.)  That Plaintiff sent an August 23, 2006
email to the Ethics Office inquiring why he had not yet heard anything from that office (*see id.* at

In March 2007, LMSI undertook layoffs, which affected Plaintiff's job at the time, and he was laid off.  (*See* Aff. of Sasha Sears (Doc. 22-2) ¶¶ 9-10.)[7]  Plaintiff's union filed a grievance on his behalf, claiming that Plaintiff should not have been laid off, given his seniority.  (*See* Def.'s Mot., Ex. C at 11-13.)  LMSI settled the grievance and recalled and rehired Plaintiff as an H-60 flight engineer contract instructor at a higher salary than his pre-lay off position.  (*See id.*, Ex. C at 134-35, 147.)

Prior to Plaintiff and Mr. Diaz applying for the flight engineer contract instructor position for the UH-1N rotary wing aircraft, both had also applied for another UH-1 position.  (*See* Def.'s Mot., Ex. A at 61.)  Neither Plaintiff nor Mr. Diaz was chosen for that position.  (*See id.*)  Instead, LMSI chose Tony Gaier for the position due to his recent, direct experience in the Air Force doing the same job.  (*See id.*, Ex. A at 61-62.)  Tony Gaier is Caucasian.  (*See id.*, Ex. C at 67.)

## III.    LEGAL STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Quaker State Mint-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party."  *Id.*  (internal quotations omitted).  Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise

---

1) does not show that no action was taken on his complaint between August 23, 2006, and March 2007.

[7]This fact, while alleged in the briefs at issue here, was not supported by any admissible evidence, but appears to be undisputed.  The Court has included the fact in order to provide context for why Plaintiff filed a grievance.

properly supported motion for summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Id.*

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue of material fact for trial.  *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  There is no genuine factual dispute for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.

## IV.   ANALYSIS

### A.   Plaintiff's Race and National Origin Discrimination Claims

#### 1.   Title VII and Section 1981

Title VII prohibits employers from refusing to hire an individual based on his race or national origin.  42 U.S.C. § 2000e-2(a).  Section 1981 prohibits race discrimination in making and enforcing contracts.  *See* 42 U.S.C. § 1981.  A plaintiff must establish intentional discrimination through either direct or circumstantial evidence.  *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

In the absence of direct evidence of discrimination, courts use a three-part burden-shifting framework for evaluating discrimination claims under Title VII and Section 1981.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Kendrick*, 220 F.3d at 1225 & n.4.  First, the

employee must make a prima facie case of discrimination by showing: (1) he is a member of a protected class; (2) he applied for and was qualified for the position; (3) despite being qualified, he was rejected; and (4) the position remained open or was given to another employee of the same or lesser qualifications. *See McDonnell Douglas*, 411 U.S. at 802; *Kendrick*, 220 F.3d at 1226. If the employee establishes his prima facie case, the employer must present evidence of a legitimate, non-discriminatory reason for the adverse decision against the employee. *See McDonnell Douglas*, 411 U.S. at 802-04. The burden then shifts to the employee to point to facts on record showing that his employer's proffered reasons actually are pretext for impermissible discrimination. *See id.* at 804.

Pretext can be shown through evidence of weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reasons, indicating the stated reasons are false, or through evidence that the employer acted contrary to a policy or practice when making the adverse employment decision. *See Kendrick*, 220 F.3d at 1230; *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). The court does "not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118-19 (10th Cir. 2007). The court considers the facts as they appeared to the person making the decision, without acting as a super-personnel department and second-guessing the decision, even if it seems in hindsight to have been a poor business judgment. *Id.* at 1119.

The Supreme Court has indicated that a prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume the employer's actions, if otherwise unexplained, are more likely than not based on consideration of impermissible factors. *Notari v. Denver Water Dept.*, 971 F.2d 585, 589 (10th Cir. 1992) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). This presumption of discrimination is predicated on the employee's

9

membership in a protected class or historically disfavored group. *See Livingston v. Roadway Express, Inc.*, 802 F.2d 1250, 1252 (10th Cir. 1986).

Title VII's protections are not limited, however, to historically disfavored groups. *Id.* Members of a historically advantaged or preferred group may also assert disparate treatment claims, *i.e.*, reverse discrimination claims, under the statute. *See id.* The presumption of discrimination that follows when a plaintiff belongs to a historically disfavored group, however, is not necessarily justified when the plaintiff is a member of a traditionally favored group. *Id.* Where an employee claims reverse discrimination, the presumption that, unless otherwise explained, discrimination is more likely than not the reason for the challenged decision is valid only when the plaintiff shows that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority. *See Notari*, 971 F.2d at 589.

Nevertheless, just because a reverse discrimination plaintiff cannot show the background circumstances necessary to trigger the *McDonnell Douglas* presumption does not mean that his employer has not intentionally discriminated against him. *Id.* at 590. A plaintiff may also establish a prima facie case of disparate treatment by presenting (1) direct evidence of discrimination or (2) indirect evidence sufficient to support a reasonable probability that, but for the plaintiff's status, the challenged employment decision would have favored the plaintiff. *See id.* As the Tenth Circuit explained:

> We emphasize that a plaintiff who attempts to state a prima facie case in this fashion is not entitled to rely on the presumption that is implicit in the *McDonnell Douglas* prima facie case analysis. In other words, *it is not enough under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision.* Instead, the plaintiff must allege and produce evidence to support *specific facts* that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.

*Id.* (emphasis added).  *See also Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136, 1150 (10th Cir. 2008) (explaining that, to prove Title VII intentional discrimination, plaintiff may rely either upon circumstantial evidence and the *McDonnell Douglas* presumption that arises from it or present direct proof of discriminatory intent).

In the present case, Plaintiff's primary evidence to support his claim of reverse discrimination consists of his personal beliefs that he was a superior candidate to Mr. Diaz, and thus, LMSI's failure to hire him for the position must have been due to his race and ethnicity.  These opinions, however, are not "specific facts" and thus cannot support the reasonable inference that Plaintiff was discriminated against because of his race.  *See Bullington* v. *United Airlines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999), *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (holding that plaintiff's own opinions about her qualifications do not give rise to a material factual dispute).  Nor does a comparison of Plaintiff's and Mr. Diaz's resumes show that Plaintiff was overwhelmingly better qualified than Mr. Diaz such that the Court would be compelled to make the same conclusion that Plaintiff has.  *See id.* at 1319 (noting that comparison of plaintiff's qualifications with other interviewees gave court no reason to question defendant's explanation for its hiring decision because evidence did not show she was overwhelmingly better qualified than other candidates).  Moreover, the Tenth Circuit has specifically held that the mere allegation that a plaintiff was qualified and that someone of a different race was hired instead is not enough to establish a prima facie case of reverse discrimination.  *See Notari*, 971 F.2d at 590.

Plaintiff also argues that Defendant showed discriminatory animus against him by denying him the training opportunities offered to Mr. Diaz, by failing to process his discrimination complaint, and by failing to recall him despite his seniority.  The record does not support these

assertions.  First, as noted previously, the evidence only shows that Mr. Jahnke told Plaintiff that he believed it would serve him no purpose to monitor the classes, that Plaintiff attended some classes anyway, and that he did not attend more because he felt he was already familiar with the systems and that the classes would not benefit him.  This evidence does not show, or even raise a specter of, discriminatory intent.  Second, the record does not demonstrate that LMSI failed to process his discrimination complaint; instead, it shows that Plaintiff's EEOC complaint was processed and that, in deference to that process, LMSI's Ethics Office informed Plaintiff that it would not separately investigate Plaintiff's complaint.  Third, contrary to Plaintiff's argument, the evidence shows that, although Plaintiff was laid off, after considering the union's grievance, Defendant recalled him because of his seniority.  Plaintiff simply has not shown direct evidence that Defendant discriminated against him based on his race or specific facts that are sufficient to support the reasonable inference that, but for Plaintiff's race, he would have been offered the position over Mr. Diaz.

This conclusion does not, however, end the inquiry, because the Court must also determine whether Plaintiff has established a prima facie case under the *McDonnell Douglas* formulation.  Because Plaintiff has asserted a reverse discrimination claim, in order to survive Defendant's motion for summary judgment, Plaintiff must demonstrate that background circumstances support the inference that Defendant is one of those unusual employers who discriminates against the majority.  Plaintiff has presented no evidence to support such an inference.  Rather, the evidence in the record that LMSI previously chose Tony Gaier, a Caucasian, for another UH-1 position, suggests that LMSI does not discriminate against the majority.

In sum, Plaintiff has not established a prima facie case of discrimination based on his race under any of the alternative approaches that the Tenth Circuit has outlined.  Because Plaintiff has

12

not presented sufficient facts to create a genuine issue for trial, Defendant is entitled to summary judgment on Plaintiff's Title VII and Section 1981 claims.

Although further analysis is unnecessary for the Court's decision on these claims, the Court notes that, even if Plaintiff's evidence were somehow sufficient to establish a prima facie case of reverse race discrimination, his claim would still fail under the third prong of the *McDonnell Douglas* analysis because Plaintiff cannot show that Defendant's non-discriminatory reasons for not hiring him – that it believed Mr. Diaz was the more qualified candidate for the position than Plaintiff – are pretextual.  Defendant has provided substantial evidence in support of its proffered legitimate reason for declining to hire Plaintiff.  First, Plaintiff scored lower on the standardized interview questionnaires than Mr. Diaz.  Second, the interviewers had far more favorable impressions of Mr. Diaz than Plaintiff, which are reflected in their comments about the candidates on the interview evaluation forms.  In fact, many of the interviewer's comments regarding Plaintiff were negative.  Third, the interviewers considered Mr. Diaz's personality and professionalism, his initiative in attending training seminars, and his having flown the aircraft in the Air Force more recently.  The record shows that Plaintiff did not complete the training course that would have updated his knowledge of the UH-1N airframe, whereas Mr. Diaz did complete the course.  The interviewers were also aware of Plaintiff's work-related behavior during his period of employment, including employee complaints that Plaintiff had been rude and unprofessional as well as student critiques in which students highlighted Plaintiff as being less of an instructor than they would have liked.  Based on this substantial evidence, Defendant has met its burden of showing that its reasons for not hiring Plaintiff were unrelated to his race.

Plaintiff contends that the above reasons proffered by Defendant are pretext for race discrimination, as evidenced by the inconsistent explanations given by Defendant for not hiring him

13

and by Defendant's failure to follow its own policies on processing discrimination complaints. Plaintiff's arguments lack merit.  Contrary to Plaintiff's argument, the evidence in the record shows that Defendant has consistently asserted that it hired Mr. Diaz instead of Plaintiff because Mr. Diaz was more qualified than Plaintiff. *See supra* at 4-5 & n.3, 4, & 5.  In fact, in the EEOC response letter cited by Plaintiff, Defendant asserted that it selected Mr. Diaz because, among other reasons, it had determined that Mr. Diaz was more qualified for the position than the other applicants, including Plaintiff.  Furthermore, Plaintiff has not shown that Defendant did not rely on the scores from the standardized interview evaluation forms in making its decision.  The forms covered a range of factors from experience to being a team player and showing a positive attitude and volunteerism. Plaintiff has thus not demonstrated sufficient weaknesses, inconsistencies, or contradictions in LMSI's stated reasons to infer that LMSI's reasons are unworthy of credence.  Finally, as previously discussed, Plaintiff's evidence, viewed in the light most favorable to Plaintiff, does not show that Defendant failed to follow its own policies regarding the processing of his discrimination complaint. Because Plaintiff cannot point to evidence on record showing Defendant's proffered reasons are pretextual, Plaintiff fails to present a genuine issue of material fact for trial.

## 2.    NMHRA

The NMHRA prohibits employers from engaging in race-based discrimination.  *See* N.M. Stat. Ann. § 28-1-7.  Although the New Mexico Supreme Court has not adopted federal Title VII law as its own, it has nevertheless relied on the *McDonnell Douglas* burden-shifting framework when evaluating civil rights claims under the NMHRA.  *See Gonzales v. N.M. Dept. of Health*, 2000-NMSC-029, ¶¶ 20-22, 129 N.M. 586.  Consequently, a plaintiff can establish a discrimination claim under the NMHRA if he can show direct evidence of impermissible discrimination or indirect evidence of discrimination under the *McDonnell Douglas* framework.  *See Sonntaq v. Shaw*, 2001-

NMSC-015, ¶ 27, 130 N.M. 238.

For all the reasons Plaintiff's race discrimination claims fail under Title VII and Section 1981, he similarly cannot succeed on his race claims brought under the NMHRA. Plaintiff has no direct evidence Defendant discriminated against him based on his race. Nor can Plaintiff make a prima facie case under *McDonnell Douglas* or prove that Defendant's reasons for hiring Mr. Diaz were pretextual. *Cf. Cates v. Regents of New Mexico Institute of Min. & Technology*, 1998-NMSC-002, ¶¶ 24-26, 124 N.M. 633 (holding that plaintiff's "mere conjecture" that defendant's proffered reasons for not retaining him were pretextual was insufficient to avoid summary judgment and that, because plaintiff lacked any other evidence outside of his personal beliefs that he was a better mechanic to support an inference of pretext, defendant's motion for summary judgement was properly granted). Defendant's motion for summary judgment on Plaintiff's NMHRA claim must therefore also be granted.

### B.    Plaintiff's Age Discrimination Claims

#### 1.    ADEA

Under the ADEA it is illegal for an employer to discriminate against any individual over 40 years of age "*because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added) & § 631(a). Where an employee claims disparate treatment under the ADEA, the Tenth Circuit applies the burden-shifting framework used in Title VII claims, as set forth in *McDonnell Douglas*. *See Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1454-55 (10th Cir. 1994). Although the Tenth Circuit has treated Title VII and ADEA claims similarly, the statutes differ in significant ways. *See Gross v. FBL Financial Services, Inc.*, __ U.S. __, 129 S. Ct. 2343, 2349 (2009). Title VII explicitly provides that a plaintiff may establish an unlawful discrimination claim by showing that an improper consideration was "a motivating factor" for an adverse employment decision. *See* 42

U.S.C. § 2000e-2(m) (stating Title VII authorizes discrimination claims where the employee demonstrates that "race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice"); *Gross*, 129 S.Ct. at 2349. The ADEA, in contrast, contains no such language. *Cf.* 29 U.S.C. § 623. The ADEA simply states that an employer may not take adverse action "because of" the employee's age. *Id.* § 623(a).

Based on these statutory differences, the Supreme Court recently clarified that, unlike under Title VII, the ADEA does not authorize a mixed-motive age discrimination claim. *Gross,* 129 S.Ct. at 2350. The Court reasoned that Congress's failure, when it amended Title VII, to add to the ADEA a similar provision allowing a plaintiff to establish discrimination by showing that age was a motivating factor, even though it contemporaneously amended the ADEA in several other ways, indicates that Congress did not intend to apply the same standard in both Title VII and ADEA claims. *See id.* Turning to the text of the ADEA, the Court interpreted "because of" to mean that age must be "the 'reason' that the employer decided to act." *Id.* at 2350. The Supreme Court therefore held that, for a plaintiff to succeed on an ADEA claim, he must prove by a preponderance of the evidence (which may be direct or circumstantial) that his age was the "but-for" cause of the disparate treatment, rather than merely one of multiple reasons for the employer's adverse action. *See id.* at 2350-51. "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 2352.

The Supreme Court in *Gross* noted that it has never held that the *McDonnell Douglas* burden-shifting framework applies to ADEA claims, and it declined to do so in *Gross*. *See Gross*, 129 S.Ct. at 2349. The Tenth Circuit, however, has traditionally allowed a plaintiff to avoid summary judgment on his ADEA claims by showing either direct evidence of the employer's

discriminatory intent or by presenting circumstantial evidence creating an inference of discriminatory intent using the *McDonnell Douglas* burden-shifting analysis. *See Riggs*, 497 F.3d at 1114. Given that the Tenth Circuit has long applied the *McDonnell Douglas* framework to ADEA cases, the Supreme Court has yet to reject its application, and the parties assume the burden-shifting framework applies, the Court will consider Plaintiff's ADEA claims using the *McDonnell Douglas* analysis. *Cf. Guinto v. Exelon Generation Co., LLC*, 2009 WL 2502099, *4 & n.2 (7th Cir. Aug. 18, 2009) (unpublished opinion) (continuing to apply burden-shifting framework to ADEA claims, even after *Gross*, because of circuit's long history applying framework to ADEA cases and because parties assumed indirect method was appropriate); *Milby v. Greater Philadelphia Health Action*, 2009 WL 2219226, *1 (3d Cir. July 27, 2009) (unpublished decision) (analyzing plaintiff's ADEA claims under *McDonnell Douglas* framework because parties did not dispute propriety of district court using that framework on summary judgment); *Fuller v. Seagate Technology, LLC*, 2009 WL 2568557, *8 & n.9 (D. Colo. Aug. 19, 2009) (unpublished opinion) (applying *McDonnell Douglas* analysis to ADEA claims after *Gross*).

Plaintiff has not proffered any direct evidence of age discrimination, so he must rely on circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. To make a prima facie case of age discrimination, Plaintiff must produce evidence tending to establish that (1) he was over 40 years old; (2) he was qualified for the position for which he applied; (3) he was not hired for the position; and (4) the defendant filled the position with a younger person. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The evidence proffered by Plaintiff makes a prima facie case of age discrimination, which Defendant does not appear to dispute.

The burden thus shifts to Defendant to set forth evidence of a legitimate, non-discriminatory reason for its failure to hire Plaintiff. *See id.* For the same reasons discussed above in addressing

17

Plaintiff's race discrimination claims, the Court concludes that Defendant has presented a legitimate, non-discriminatory reason for why it did not hire Plaintiff for the position – Mr. Diaz was the more qualified candidate.

Thus, to survive summary judgment, Plaintiff must come forward with evidence establishing that Defendant's proffered reason was merely pretext for age discrimination. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007). As with Plaintiff's Title VII claims, his facts must consist of more than his subjective beliefs about his own performance and abilities. *See Bullington*, 186 F.3d at 1318. Additionally, Plaintiff must do more than allege that LMSI's rationale was based on incorrect or incomplete knowledge or facts about him. *See id.* Instead, "[t]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Id.*

Here, the admissible evidence on record does not establish a viable ADEA claim. Plaintiff cannot show that, but for being older than Mr. Diaz, he would have received the desired position. Plaintiff's subjective beliefs that he was more qualified than Mr. Diaz do not create a question of fact as to whether Plaintiff was not hired because of his age. Nor has Plaintiff produced any evidence showing that Defendant did not honestly believe Mr. Diaz was the more qualified candidate. Rather, as discussed more thoroughly above, the evidence in the record indicates that Defendant had reason to believe that Mr. Diaz was more qualified than Plaintiff.

Finally, Plaintiff's contention that Defendant used his seniority with the company as a proxy for age is also defective. While the consideration of seniority might give rise to an inference of age discrimination, such a consideration does not dispositively show an ADEA violation. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611-13 (1993) (holding that employer does not violate ADEA

18

merely by interfering with employee's pension benefits that would have vested by virtue of employee's years of service because "an employee's age is analytically distinct from his years of service").  In this case, Plaintiff has not shown that the hiring committee considered Plaintiff's seniority during the selection process.  Nor does Plaintiff's March 2007 layoff prove that Defendant targeted him because of his age.  Rather, the record shows that Defendant, upon considering his seniority, realized its error and re-hired Plaintiff to a higher-paying position than before he was laid off.  This later incident does not prove Plaintiff's age was the reason he was not hired for the UH-1N position.

In sum, Plaintiff has not produced evidence that he was not hired for the UH-1N position because of his age.  Defendant is therefore entitled to summary judgment on Plaintiff's ADEA claim.

### 2.    NMHRA

Under the NMHRA, it is unlawful for an employer to discriminate against an employee because of his age.  *See* N.M. Stat. Ann. § 28-1-7(A).  New Mexico courts employ the *McDonnell Douglas* burden-shifting framework to analyze age-discrimination claims under the NMHRA when direct evidence of age discrimination is lacking.  *Cates*, 1998-NMSC-002, ¶¶ 15-16.  For all the same reasons Defendant is entitled to summary judgment on Plaintiff's ADEA claim, Defendant's motion for summary judgment on Plaintiff's NMHRA claim should also be granted.

**IT IS THEREFORE ORDERED** that

1.    Defendant's Motion for Summary Judgment on Counts I, II, III, and IV of the Complaint and Memorandum in Support (**Doc. 46**) is **GRANTED**; and

2.      Defendant is entitled to summary judgment on all remaining claims in this case.


_____
SENIOR UNITED STATES DISTRICT JUDGE